69666, 69667. LUCAS v. THE STATE (two cases).
(330 SE2d 792)

BEASLEY, Judge.

Defendant appeals from his conviction of armed robbery and aggravated assault.

1. Lucas contends that the trial court erred in denying his motion for continuance.

On February 29, 1984, the trial court granted Lucas' petition for psychiatric evaluation and ordered that copies of the report be provided to all counsel. The evaluation report stated that Lucas fully understood the charges and possible consequences and could "very adequately" assist his lawyer in his defense. It also stated that there was no evidence that Lucas "was suffering from any type of mental illness that would have impaired his ability to appreciate the nature of his actions." On the morning of the day set for trial, March 19, Lucas' lawyer moved for continuance, asserting that he had not seen the psychiatric report until that morning and that he only then became aware that further investigation was needed by him concerning psychiatric treatment previously undergone by Lucas. Counsel argued that he had not conducted his own investigation up to that point because he was under the impression that the court-ordered evaluation would include this investigation and resulting information, and he wished to avoid burdening his "indigent" client with unnecessary additional costs.[1] He contends that he had previously furnished some information regarding prior treatment to the court to aid in its investigation. The court denied the continuance on the basis that investigation was the responsibility of the defense, and the case was tried the next day. Counsel did discuss the evaluation with the physician in the interim.

A motion for continuance is addressed to the sound discretion of the trial court, and this court will not interfere unless it is clearly shown that the court abused its discretion. OCGA § 17-8-22; *O'Neal v. State,* 254 Ga. 1 (325 SE2d 759) (1985). Here, the basis for the continuance was counsel's claim that he had insufficient time to show Lucas was "either not competent to stand trial or to appreciate the criminal nature of his alleged acts," but he offered only his belief that further investigation would yield supporting evidence, based upon information that Lucas had in the past received drug/psychological

---

[1] Retained counsel had replaced the public defender initially appointed.

counseling in three different cities. This was an insufficient showing of a necessity for a continuance. *Harris v. State*, 211 Ga. 327 (1) (85 SE2d 770) (1955); *O'Neal v. State*, supra. Indeed, the psychiatric evaluation report indicated that Lucas was competent to stand trail and did appreciate the nature of the acts alleged. Defense counsel introduced nothing to counter this report.

Moreover, "the party making an application for a continuance must show that he has used due diligence." OCGA § 17-8-20. Lucas' counsel had almost three weeks between the grant of his motion for a psychiatric examination and the date set for trial, yet he made no request for additional time to prepare his defense, no plea of any kind regarding Lucas' mental condition, and, it appears, no inquiry into why he had not earlier received a copy of the psychiatric report. The record further shows that counsel conducted no investigation of his own as to his client's mental state and did not even obtain authorization from his client to secure medical records from the drug/psychological counseling centers where counsel knew Lucas had received treatment. There was clearly a lack of due diligence. While an indigent is entitled to a state-provided psychiatrist in certain circumstances, see *Ake v. Oklahoma*, 53 L.W. 4179 (U. S. Supreme Court #83-5424, Feb. 26 (1985)), the state is not required to undertake defendant's investigation for him. Accordingly, we find no error.

2. Lucas next contends that the trial court erred in denying his motion to suppress identification testimony, asserting that the photo identification was impermissibly suggestive.

On the night of the robbery, four witnesses were brought down to the police department to participate in a photographic lineup. One by one the witnesses were led to a table on which six photographs were placed, while the other witnesses remained at another table approximately eight feet away. Two witnesses positively identified Lucas' photo as depicting the man they saw commit the robbery. The other two witnesses made no identification.

We find no support for Lucas' claim that the photo lineup was impermissibly suggestive and that the subsequent in-court identifications were thereby defective. *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972), *Johnson v. State*, 169 Ga. App. 943 (1) (315 SE2d 667) (1984).

While the better practice would have been to completely separate potential witnesses during the identification procedure, we do not find the procedure used in the instant case to be so suggestive as to taint the subsequent in-court identification. Although the witnesses were in the same room, there was testimony to the effect that during the procedure they were unable to see which photos the others were viewing or hear any conversation at the table with the photos from the other table and were unaware if identifications had been made by the other

witnesses. *Jenkins v. State*, 156 Ga. App. 387 (1) (274 SE2d 618) (1980). Finally, although Lucas was in an adjoining room at the time of the photo lineup, there is no evidence that he was seen by the witnesses.

Lucas also asserts that the conditions at the robbery were "not conductive to a reliable identification." But the witnesses maintained their confidence in the accuracy of their identifications; they testified that they had ample opportunity to view the defendant's face; they accurately described the suspect before participating in the lineup, they selected the defendant's photo with certainty, and only a brief period of time elapsed between the commission of the crime and the photo identifications. The assertion fails. See *Lynch v. State*, 158 Ga. App. 643 (281 SE2d 640) (1981).

Therefore, the denial of the motion to suppress was not error.

3. Lucas contends that the trial court erred in allowing testimony concerning misfired bullets and "clicking" and in allowing the bullets to be introduced into evidence.

At trial, Officer Thompson testified as to Lucas' apprehension. The court overruled defense counsel's objection to the officer testifying about anything he may have heard at the time as being irrelevant. Thompson then testified that as he proceeded toward Lucas he heard two "clicking" noises coming from Lucas' direction. He further testified that bullets removed from a gun in Lucas' possession had markings which indicated they had misfired. Counsel's objection to the witness' testimony regarding how the markings occurred was sustained on the basis that a proper foundation for the witness' expertise had not been laid.

Officer Choo later was asked by defense counsel whether he was "able to determine as far as from the feel or the smell as to whether or not they [the guns found on Lucas] had been shot or fired." The officer responded that two of the shells from one of the guns "were misfires." Defense counsel's objection to the admission of this statement was overruled.

Lucas submits that the court committed reversible error in allowing Thompson's testimony regarding the "clicking" and Choo's testimony on the "misfires," alleging both statements were irrelevant, highly prejudicial and inflammatory. He asserts that the testimony had nothing to do with either the robbery charge or the assault charge, which related only to the shooting at Officer Choo (Officer Thompson was not in the immediate area at the time of the alleged assault).

Admitting into evidence Thompson's testimony that he heard "clicking" was not error. See *State v. Luke*, 232 Ga. 815 (209 SE2d 165) (1974). " 'It is well settled that evidentiary facts pertaining to '[t]he flight of the accused, where and when arrested, whether he re-

sisted or not, how he was armed, and all the circumstances attending his arrest, are admissible . . . .' " *Grimes v. State*, 168 Ga. App. 372, 375 (308 SE2d 863) (1983). And, " '[w]here evidence is relevant for the purpose of showing the circumstances of the arrest, it will not be excluded because it incidentally shows the commission of another crime.' " *Ray v. State*, 157 Ga. App. 519 (2) (277 SE2d 804) (1981). Thus, even though the evidence in question may indicate the commission of an assault on Officer Thompson, for which Lucas was not charged, it is nonetheless admissible.

As to Choo's testimony that two of the shells "were misfires," the defense opened the door to such testimony by asking the witness whether the guns had been shot or fired. He may not now complain.

We therefore find this enumeration meritless.

4. The last claimed error is that there was insufficient evidence to support the verdict on the charge of aggravated assault.

The evidence indicates that Lucas and a cohort entered a store, robbed its employees at gunpoint, and that during their flight from the scene of the robbery, one of the men shot at a police officer. The officer was unable to tell which man did the shooting. Three guns were found on Lucas; they did not appear to have been fired. No other guns were found. The second suspect escaped.

Lucas asserts the record is clear that he did not shoot nor aid and abet or encourage, etc., the shooting so that his assault conviction must accordingly be reversed. However, there is sufficient evidence to support the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In addition to the above, the evidence further indicated that both men were interested in escape, both men attempted to flee, and Lucas' cohort actually succeeded. While such evidence does not demand a finding that the two men were working in concert, the evidence is sufficient to indicate a common design. *Greene v. State*, 155 Ga. App. 222 (2) (270 SE2d 386) (1980). "Once that common design is shown by evidence tending to indicate that the individuals have associated themselves together to do an unlawful act, any act done in pursuance of that association by any one of the associates, would, in legal contemplation, be the act of each of them." Id. at 224, 225. Thus, Lucas' assault conviction is not dependent upon whether he actually did the shooting.

*Judgments affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 16, 1985.

*John A. Pickens*, for appellant.

Clifford D. Lucas, *pro se.*

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Carole E.*

*Wall, Assistant District Attorneys*, for appellee.