## 70355. GEORGE v. THE STATE.

(333 SE2d 141)

BIRDSONG, Presiding Judge.

Kenneth George, the defendant, was jointly indicted with six other individuals for the offense of interference with government property, in violation of OCGA § 16-7-24. A person commits this offense when he destroys, damages or defaces state property.

George and his co-defendants were confined in the Kemper Building of the Georgia Youthful Offender Correctional Institution. This building has two dormitories, A-1 and A-2. There were approximately 40 inmates in each dormitory. The superintendent of the institution directed that a shakedown inspection for contraband be conducted in both dormitories of the Kemper Building. The officers conducting the search stripped all the beds and removed all items from each of the inmate's lockers. All of the inmates' property was placed on the floor. When the inspection was completed, the officer in charge directed the inmates to clean up the dormitory, make up their beds and return their personal property to their locker. About half of the inmates complied and the other half protested. Two correctional officers were on duty at that time. They observed twenty of the inmates bring their mattresses and beds to the front entrance of the dormitory and blockade the entrance. Their names were taken down. The shift supervisor was advised of the demonstration and the tactical squad was called in to quell the disturbance. Of the 40 inmates, 22 names were taken down and they were transferred to other institutions. They were placed in segregation, which was sometimes used for disciplinary purposes. The superintendent consulted with the District Attorney and seven people were selected for indictment on a charge of interference with government property by damaging windows, commodes, sinks, urinals, a water cooler, and a closed circuit television camera. Those seven were George, Akery, Beasley, Harvey, Rogers, Smith and Wilkins. Defendant Smith was also indicted for persuading other persons in a penal institution to commit mutiny. Smith was acquitted of both counts, but George and the remaining five co-defendants were convicted of interference with government property. Defendant George brings this appeal. *Held*:

1. Defendant enumerates two errors. Both allege violation of his due process rights under the United States and Georgia Constitutions. This appeal was filed with the Georgia Supreme Court and was transferred to this court by order, without comment. That court's refusal to review George's constitutional challenges mandates the finding that the contentions on constitutional grounds are without merit, and the transfer of the case to this court allows us to consider the enumerations on their merits as a question of due process. See *McCann v. State*, 167 Ga. App. 368 (1) (306 SE2d 681), U. S. cert. den.

104 S. C. 712; *Cassells v. Bradlee Mgt. Svcs.*, 161 Ga. App. 325 (1) (291 SE2d 48); *Denton v. State*, 154 Ga. App. 427 (2) (268 SE2d 725).

2. It is contended that the trial court erred in refusing to grant defendant's motion for directed verdict on the basis of selective enforcement of the law in violation of defendant's right to equal protection under the law (i.e., due process). We do not agree. The testimony of the three correctional officers who observed this disturbance and wrote down the names of the offenders made it clear that of the 22 inmates participating in some degree in the riot, only seven individuals were observed destroying government property. Those seven were indicted and the other 15 were transferred. The superintendent stated that the selection of those to prosecute was made by the District Attorney. The decision of whether to prosecute and what charges to file are decisions that rest in the prosecutor's discretion. *United States v. Batchelder*, 442 U. S. 114, 124 (99 SC 2198, 60 LE2d 755).

Unlawful administration by state officials of a state statute fair on its face, resulting in unequal application to those who are entitled to be treated alike, is not a denial of equal protection "unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person [cit.], or it may be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. [Cit.] But a discriminatory purpose is not presumed [cit.]; there must be a showing of 'clear and intentional discrimination.' [Cits.]" *Snowden v. Hughes*, 321 U. S. 1, 8 (64 SC 397, 88 LE 497). "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged." *Oyler v. Boles*, 368 U. S. 448, 454-456 (82 SC 501, 7 LE2d 446); accord *Bordenkircher v. Hayes*, 434 U. S. 357, 364 (98 SC 663, 54 LE2d 604). It is clear from the evidence adduced at trial that selection of these seven for prosecution was based on the sufficiency of the evidence to support the charge. Hence, we find no purposeful discrimination based on some unjustifiable standard. *Sabel v. State*, 250 Ga. 640 (4) (300 SE2d 663).

3. Appellant contends the court erred in its charge on circumstantial evidence. The seven defendants were jointly charged with damaging windows, commodes, sinks, urinals, a water cooler, and a closed circuit television camera. The testimony of the three correctional officers established that Akery was observed smashing windows with a broom handle, Beasley was using a bedpost to smash com-

modes, Rogers was seen smashing windows, pulling a water cooler from the wall, and throwing a trash can at a closed circuit television camera. Harvey and George were observed tearing a sink off of the wall, and Wilkins was seen smashing windows and throwing a trash can at a TV camera. Thus, it is evident that the state was not charging that each of the seven individuals committed each act charged, but that under the law of principals, each was a party to the crime as alleged. See OCGA § 16-2-20, which provides that every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of the crime. A person is "concerned in the commission of a crime . . . if he . . . [i]ntentionally aids or abets in the commission of the crime. . . ." OCGA § 16-2-20 (b) (3). Hence, one who aids or abets the commission of a crime by another is a party to the crime and equally guilty with the principal. *Jackson v. State*, 163 Ga. App. 526, 527 (295 SE2d 206).

Although defendant was not involved in all of the acts, his actions as an aider and abettor in the commission of some of the acts charged allow him to be charged and convicted of all the acts charged. *Carter v. State*, 168 Ga. App. 177, 178 (308 SE2d 438). The superintendent testified that more than 100 window panes were broken and two closed circuit television cameras were damaged. Proof of these facts may be made by direct and/or circumstantial evidence. " 'It is proper for the court, in the trial of a case where the evidence is both direct and circumstantial, to define to the jury each class of evidence and explain the difference between them.' [Cits.]" *Stanley v. State*, 239 Ga. 260, 261 (236 SE2d 611); accord *Casey v. State*, 249 Ga. 724 (5) (293 SE2d 321). It was not error for the trial court to charge on circumstantial evidence, where as here, the evidence consisted of both direct and circumstantial evidence.

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs specially.*

CARLEY, Judge, concurring specially.

I totally agree with the conclusion of the majority that appellant's conviction should be affirmed. However, I cannot agree with the majority's analysis in Division 1 of the opinion with regard to the effect of an order of the Supreme Court transferring a case to this court. Division 1 of the majority opinion states as follows: "Defendant enumerates two errors. Both allege violation of his due process rights under the United States and Georgia Constitutions. This appeal was filed with the Georgia Supreme Court and was transferred to this court by order, without comment. That court's refusal to review George's constitutional challenges mandates the finding that the contentions on *constitutional grounds* are without merit, and the transfer of the case to this court allows us to consider the enumerations on

their merits as a question of due process. See *McCann v. State*, 167 Ga. App. 368 (1) (306 SE2d 681), U. S. cert. den. 104 S. C. 712; *Cassells v. Bradlee Mgt. Svcs.*, 161 Ga. App. 325 (1) (291 SE2d 48); *Denton v. State*, 154 Ga. App. 427 (2) (268 SE2d 725)." (Emphasis supplied.)

I simply cannot agree that the effect of the transfer is that appellant's "contentions on constitutional grounds are without merit. . . ." All the transfer from the Supreme Court means is that the case is not within the exclusive jurisdiction of that court. "No attack has been made upon the constitutionality of any statute nor is the construction of the Constitution involved . . . , but the application of the State and Federal Constitutions to the facts in the appellant's case is involved. Under such circumstances, since the case does not involve an appeal from the conviction of a capital felony, jurisdiction of the appeal is in the Court of Appeals and not the Supreme Court. [Cits.]" *Marchman v. State*, 232 Ga. 48 (205 SE2d 266) (1974). See also *Register v. Stone's Independent Oil Distrib.*, 225 Ga. 490 (169 SE2d 781) (1969); *Ramirez v. State*, 223 Ga. 815 (158 SE2d 238) (1967); *Robinson v. State*, 209 Ga. 48 (70 SE2d 514) (1952). All of the cases of this court cited in the majority opinion deal with the transfer to this court of cases wherein the constitutionality of a *statute* had been drawn into question.

Thus, in this case, the transfer from the Supreme Court simply means that this court has jurisdiction over *all* of the issues in the case. That this is a correct interpretation is made manifest by the otherwise inconsistent language of the majority which states that "the transfer of the case to this court allows us to consider the enumerations on their merits *as a question of due process.*" (Emphasis supplied.) (Majority opinion, page 229.) The enumerations of appellant concerning the "question of due process" *are*, of course, based on *constitutional* grounds. However, as stated, these issues are within the jurisdiction of this court.

With regard to Division 2 of the opinion, the majority states that the appellant contends that the trial court erred in failing to grant his motion for a directed verdict "on the basis of selective enforcement of the law in violation of defendant's right to equal protection under the law (*i.e., due process*)." (Emphasis supplied.) (Majority opinion, page 229.) I disagree with the majority's equation of equal protection grounds with those based upon due process. They are not the same thing. In this case, the appellant's enumerations of error assert violation of his due process rights only.

DECIDED JUNE 24, 1985.

*E. Angela Emerson*, for appellant.
*Joseph H. Briley, District Attorney*, for appellee.