71816. NASH v. THE STATE.
(347 SE2d 651)

BENHAM, Judge.
A jury convicted appellant of vehicular homicide in the first degree, reckless driving, improper passing, and failure to maintain no-fault insurance. On appeal, he contests the entry of judgment against him in several of the charges; takes issue with several evidentiary rulings made by the trial court; and challenges the content of the jury charge.

The charges against appellant arose from a fatal collision which occurred when appellant attempted to pass a slower vehicle on a two-lane road in Cobb County. Eyewitnesses testified appellant crossed over a double-yellow line on a "very curvy and very hilly" road into

the path of an oncoming vehicle. Although appellant attempted to stop, the two cars collided, killing the driver of the other car and injuring the two small children who were passengers in the victim's car. An accident reconstruction expert testified appellant was traveling at a speed of at least 60 miles per hour in the 35-mile-per-hour zone at the time of the collision. An eyewitness opined that appellant was driving unsafely.

1. Appellant contends his convictions for improper passing and reckless driving should have merged into the vehicular homicide conviction under OCGA § 16-1-7 and asks that the convictions for the lesser offenses be vacated. The State is in agreement and "anticipates presenting the trial court with an amended order and supplementing the record on appeal with said order prior to the disposition of this case." Inasmuch as the record has not been so supplemented, we reverse appellant's convictions for improper passing and reckless driving since they are "lesser included offenses" of vehicular homicide. *Rank v. State*, 179 Ga. App. 28 (345 SE2d 75) (1986).

2. Appellant claims error in the content of the instructions to the jury. "In order to avoid waiver, if the trial court inquires if there are objections to the charge, counsel must state his objections or follow the procedure . . . of reserving his right to object on motion for new trial or appeal. Here defense counsel neither objected nor reserved the right to later object, and under such circumstances, the defendant has waived the right to raise the issue on appeal. [Cits.]" *Scott v. State*, 250 Ga. 195 (1c) (297 SE2d 18) (1982). "While it is true that this court shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether or not objection was made (OCGA § 5-5-24 (c)), appellant has not shown that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. [Cits.]" *Maynard v. State*, 171 Ga. App. 605 (2) (320 SE2d 806) (1984).

3. Appellant offered to plead guilty to misdemeanor vehicular homicide and make monetary restitution to the victim's family. Appellant contends the State's refusal to recommend acceptance of the plea bargain because he could not make the agreed-upon initial restitution payment of $5,000, and the trial court's refusal to accept the plea, denied him equal protection and violated OCGA § 17-14-15 (b).

"This appeal was filed with the Georgia Supreme Court and was transferred to this court by order, without comment. That court's refusal to review [appellant's] constitutional challenges mandates the finding that the contentions on constitutional grounds are without merit . . . *McCann v. State*, 167 Ga. App. 368 (1) (306 SE2d 681) [1983]." *George v. State*, 175 Ga. App. 229 (1) (333 SE2d 141) (1985).

OCGA § 17-14-15 (b) states: "No offender shall be denied any benefit, relief, or privilege to which he might otherwise be entitled or eligible solely because he is financially unable and cannot become financially able to make restitution." Contrary to his assertion, appellant does not fall within the protection of the statute inasmuch as the term "offender" is statutorily defined as "any natural person who has been placed on probation . . . or sentenced for any crime. . . ." OCGA § 17-14-2 (4).

4. Following the collision, appellant was informed of the provisions of the implied consent law and agreed to submit samples of blood and urine for testing. The forensic toxicologist who evaluated the blood and urine specimens for the presence of drugs was permitted to testify that appellant's blood and urine samples contained metabolite of tetrahydrocannabinol, an ingredient of marijuana, the presence of which indicated marijuana usage within the last 24 to 36 hours. Appellant objected to the admission of the testimony, contending it was irrelevant since appellant had not been charged with driving under the influence of drugs. However, the witness went on to state that delayed motor responses and distortion of space and time were observed reactions linked with marijuana usage. Another expert witness testified that a low dosage of marijuana could cause alterations in the user's sight, smell, and hearing sensory perceptions. Since appellant's blood and urine samples contained a substance that could have affected appellant's perceptions while driving, since appellant had stated that he had made the attempt to pass based upon his perceptions of the situation, and since appellant was charged with reckless driving, a violation which could have been precipitated by appellant's marijuana usage, the test results were admissible.

5. While conducting an inventory search of appellant's automobile, the searching officer found a hard hat, work gloves, a can, a screwdriver, a hairbrush, a Narcotics Anonymous booklet, and a white paper sack containing ten disposable syringes and a receipt therefor. Only the booklet and syringes were offered and admitted into evidence. When questioned by police, appellant admitted ownership of the pamphlet and syringes and, after giving an incriminating statement, told officers he had used cocaine approximately 24 hours before the collision. Appellant contends his statement regarding cocaine usage, the booklet, and the syringes should not have been admitted into evidence because they were irrelevant to the issues on trial. The State maintains the statement was admissible to show appellant's state of mind, and the syringes and pamphlet were admissible because "they served to place the defendant at the specific location of the crime" and "were circumstantial evidence of the route that the appellant took immediately prior to the collision."

"It is no valid ground of objection to the admission in evidence of

an incriminatory statement or confession made by the accused in a criminal case that the language indicated that the accused had committed also another and separate offense. [Cit.]" *Stephens v. State*, 164 Ga. App. 398 (4) (297 SE2d 90) (1982). Thus, appellant's admission he had used cocaine the night before the collision was admissible. See *Miller v. State*, 155 Ga. App. 587 (2) (271 SE2d 719) (1980). However, the syringes and Narcotics Anonymous booklet are another matter. These items had no probative value insofar as the charges leveled against appellant were concerned. Instead, they could serve only to instill in the jury's mind that appellant was a user of hard drugs. The inflammatory nature of these items of evidence is further enhanced by the fact that the non-drug related items found in appellant's car were not introduced into evidence. To suggest that these items were necessary to place at the scene a defendant who was taken into custody at the scene, who never contested his presence at the scene, and who never denied his involvement in the collision is to stretch credulity to its limits.

The State maintains that admission of the bag of syringes, complete with store receipt, was necessary to establish appellant's pre-collision route. The necessity of such evidence in light of the testimony of witnesses who were followed by appellant for several miles before the collision (who in fact were in the car appellant was attempting to pass at the time of the collision), and the admission of appellant's statement to the police in which he recounted his pre-collision route, is questionable. Even if such a facet of the case were necessary to support a conviction, the bag and receipt were sufficient evidence to establish the identity of the store where appellant had made his purchase. The articles actually purchased were irrelevant to the case and should not have been admitted.

Oftentimes, prosecutorial overkill places appellate courts on the horns of a dilemma — do we reverse a conviction in which no reasonable doubt of guilt exists in order to make prosecutors aware that such indiscretions will not be tolerated? Or are we constrained, due to the sheer amount of evidence presented against the defendant, to uphold the conviction and condemn as "harmless error" the excesses of the prosecutor? Were the evidence before us not as clear and convincing of guilt, we would reverse the convictions due to prosecutorial overzealousness. However, eyewitnesses stated appellant drove a vehicle on the wrong side of a hilly and curvy road at an excessive speed, causing a woman's death; in his own statement, appellant acknowledged his role in the collision. We, therefore, are constrained to uphold the conviction of vehicular homicide despite the prosecutorial excesses.

6. Appellant contends the evidence was insufficient to support the jury's guilty verdict on the charge appellant had failed to main-

tain no-fault insurance on the vehicle involved in the collision.

The insurance agent who handled appellant's account testified appellant added a 1968 Camaro to his policy on July 15, 1983, and a memo requesting an additional premium for the Camaro was issued on September 16; appellant never sent the additional funds. The agent's partner testified appellant came to the agent's office on September 20, wishing to cancel his insurance policy. The State tendered the October 4, 1983, correspondence from the insurance company to appellant's agents authorizing a premium refund due to cancellation of appellant's automobile liability policy. The fatal collision occurred on October 11, 1983. In taking a common sense approach to this matter, upon a showing of cancellation within a reasonable time prior to the offense, the jury was authorized to infer in the absence of evidence to the contrary that the condition of cancellation continued to exist on the date of the offense.

7. On the morning of the third day of trial, counsel for appellant informed the court that appellant was not present and that he waived appellant's presence "for the time being." The trial court deemed appellant's absence to be voluntary and continued the trial. After the luncheon recess, appellant's counsel, faced with appellant's continued absence, withdrew his waiver of appellant's presence and moved for a mistrial or a continuance on the ground that appellant was incompetent to continue, having succumbed, in counsel's opinion, to the stress of the trial.

"A motion for continuance is addressed to the sound discretion of the trial court, and this court will not interfere unless it is clearly shown that the court abused its discretion. [Cits.]" *Lucas v. State*, 174 Ga. App. 580 (1) (330 SE2d 792) (1985). Here, counsel offered only his opinion that appellant was incapable of continuing with the trial. "This was an insufficient showing of a necessity for a continuance. [Cits.]" Id. See also *O'Neal v. State*, 254 Ga. 1 (2) (325 SE2d 759) (1985). Nor was it error to deny appellant's motion for mistrial. Like a motion for continuance, a motion for mistrial is addressed to the sound discretion of the trial court and will not be reversed unless there is an abuse of discretion. *Everett v. State*, 253 Ga. 359 (4) (320 SE2d 535) (1984).

8. During the presentation of his defense, appellant tendered into evidence a videotape depicting the scene of the collision. Appellant enumerates as error the refusal of the trial court, after viewing the tape and hearing argument outside the presence of the jury, to admit the videotape into evidence. Appellant contends the tape illustrated that the road could have appeared clear to a driver in appellant's position but oncoming vehicles could emerge from a hidden dip in the roadway. The State points out several dissimilarities between the depiction of the scene by the videotape and by trial testimony.

"[I]t is for the [trial] court to decide in the exercise of its discretion as to whether or not under the evidence a photograph or movie film, as here, is a fair and accurate representation of the scene sought to be depicted. We find no abuse of discretion. [Cits.]" *City Council of Augusta v. Lee*, 153 Ga. App. 94 (4) (264 SE2d 683) (1980).

*Judgment affirmed in part and reversed in part. Deen, P. J., concurs in the judgment only. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I agree with what is said in the opinion, except that as to Division 3, I concur only in its conclusion.

First, the transfer of the case to this court does not indicate that the Supreme Court considered appellant's constitutional challenge without merit.

As the jurisdictional statement of appellant shows, Supreme Court review was sought because appellant challenged the constitutionality of two statutes, OCGA §§ 16-2-4 and 16-2-5. These relate to certain presumptions regarding a person's will and intent. No doubt because statutory constitutionality has now been dealt with in *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344) (1985), rendering the question merely one of application rather than construction, Supreme Court jurisdiction was declined. *Zepp v. Mayor &c. of Athens*, 255 Ga. 449, 451 (339 SE2d 576) (1986). Its exclusive jurisdiction encompasses "all cases . . . in which the constitutionality of a law . . . has been drawn in question." Ga. Const. 1983, Art. I, Sec. VI, Par. II (1). Thus there appeared for review only whether the trial court's charges to the jury on these subjects conformed to the constitutionally modified statutes or not, and the resolution of that question, dealt with in Division 2 of the opinion, falls within the jurisdiction of this court. *Boswell v. State*, 176 Ga. App. 855 (338 SE2d 62) (1985); *Heard v. State*, 175 Ga. App. 793 (334 SE2d 374) (1985). For further elucidation on this subject, see *George v. State*, 175 Ga. App. 229, 231 (333 SE2d 141) (1985).

Appellant does not challenge the constitutionality of the statute OCGA § 17-14-15 (b) but rather its application in his particular case. He urges that the state's refusal in plea bargaining to recommend to the trial court the acceptance of a misdemeanor plea, and the court's refusal to accept such a plea and appellant's offered restitution plan, deprived him of federal and state constitutional rights to equal protection of the laws. Thus I believe it is no answer to say that the transfer to this court mandates the conclusion that the constitutional contentions are without merit. They have yet to be addressed. Appellant recognized this as a question within our jurisdiction, for he did not present it as a basis for Supreme Court jurisdiction when he filed his appeal there. Whether the prosecutor's and the court's actions in

refusing appellant's requests constituted unconstitutional applications of OCGA § 17-14-15 (b) and the scheme of which it is a part, would fall within the jurisdiction of this court. See *Liles v. Still,* 176 Ga. App. 65 (1) (335 SE2d 168) (1985).

After dispensing with the constitutional claims, the majority turns to the assertion that the statute was violated by the district attorney's and the trial court's refusals. Short shrift is given, as the majority concludes that OCGA § 17-14-15 (b) does not apply to appellant because he was not then an "offender" as statutorily defined. That is clearly so with respect to the plea bargaining efforts with the district attorney. The statutory scheme with respect to restitution, moreover, does not embrace plea bargaining as one of the forms of "relief" to which it applies. OCGA § 17-14-2.

DECIDED JUNE 27, 1986 —
REHEARING DENIED JULY 9, 1986.

*Allen R. Hirons,* for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney,* for appellee.