## 74820. McGUIRE v. THE STATE.
(363 SE2d 850)

PER CURIAM.

Defendant appeals his convictions of two offenses of selling cocaine in violation of the Georgia Controlled Substances Act. *Held*:

1. The court erred in refusing to grant defendant's motion for a continuance. The record and the law do not support the conclusion that the refusal of a continuance was not an abuse of discretion in the application of OCGA §§ 17-8-25 and 17-8-20.

It was charged in indictments of February 2, 1987, that on two

occasions, October 2, and November 5, 1986, defendant "did . . . sell . . . cocaine." The defense was that *he* did not sell it or have any criminal involvement in its sale, but that it was sold by Timmy Kirby.

Defendant secured issuance of a subpoena on February 9, 1987, for Kirby at an address in Summerville, for him to appear at trial on February 28 at the superior court in Summerville. Kirby was a resident of Chattooga County, and the subpoena was served the next day by a deputy sheriff. This is the only subpoena in the record. Defendant's expectation that Kirby would be present explains why onlookers were not subpoenaed: there would be no need for them when the only involved person is available to testify.

When the case was sounded for trial, a Mrs. Kirby answered that Timmy Kirby was in the hospital and "can't get here." Defendant moved for a continuance. He proved via the sheriff that Kirby was in the hospital in Floyd County, having shot himself in the stomach, and was not excused from court attendance. The sheriff did not know the prognosis or the ability of Kirby to attend court at a later date, and defense counsel stated in his place that he had inquired of the hospital as to Kirby's condition and was told that the hospital had no information about Kirby. The sheriff explained the refusal of information by stating that he had written to the hospital at Kirby's mother's request, to be on the lookout for possible problems because of threats against Kirby.

Defendant testified at the motion hearing that it was Kirby who sold the cocaine and that defendant was just a passive onlooker at the sales. Kirby completed the transactions at defendant's girl friend's house so as to make the undercover Agent DeLoch think it was defendant and not Kirby who was selling the cocaine, because Kirby and Agent DeLoch were related and Kirby was afraid DeLoch would tell Kirby's mother that he was selling cocaine. Defendant refused to do the selling, he said, so Kirby did it in an equivocal way so as to still lead Agent DeLoch to believe it was defendant transacting the selling. Defendant further testified that Kirby brought and handled the cocaine and the money throughout the exchange (except on the first occasion when he tried to give it to defendant who handed it back before DeLoch was brought in, and when he made change for DeLoch). Defendant actually refused the money, according to him, telling DeLoch the drugs were not his and therefore he did not want any money. This happened both times, except on the second occasion DeLoch did not try to give the money to defendant.

Four other people were present on the first occasion, except that the girl friend was in the living room rather than in the kitchen throughout. The girl friend Diane Ramey, defendant's sister Pauline Laney, Cynthia Butler or Campbell, and Tommy Hartline were the others. All but Diane were playing cards on the table where the co-

caine and money were placed.

On the second occasion, the girl friend and sister were present, and the transaction occurred in the kitchen again rather than in the living room where defendant was watching television with his girl friend. Defendant saw that the cocaine and the money were put on the kitchen table, saw DeLoch pick up the cocaine, and later saw Kirby go back into the kitchen for the money. The subject was not discussed. The girl friend did not witness it. Defendant himself bought cocaine from Kirby immediately following that incident, and previously, but never sold or distributed cocaine.

This being defendant's version of the events, the testimony of Kirby was crucial or, if his presence could not be obtained, then that of the other onlookers. Defendant's sister testified but was somewhat impeached by her familial relationship and prior record. No opportunity was given to defendant to secure Kirby at a later time or, if he was to remain unavailable, subpoena any of the other witnesses. Yet he had gone to some lengths to follow the requirements of the two applicable Code sections. The evidence presented to the court in the form of testimony by the sheriff and defendant and the statements in his place by defendant's counsel showed that he had used "due diligence." OCGA § 17-8-25. Yet the court simply denied the motion, ruling without specification that "counsel has not shown all of the proper elements for a continuance."

We look at the requirements. It is beyond dispute that the witness was absent, that he had been subpoenaed, that he did not reside more than 100 miles from the place of trial, that the witness was not absent by permission of the applicant. Defendant laid out the facts expected to be proved by the absent witness, facts which would absolve defendant. Next, considering the direct involvement of Kirby, whom defendant believed to be a confidential informant, it could not be said that his testimony was not material. For example, Agent DeLoch testified at trial that Kirby was not present at the second transaction, whereas defendant at the motion hearing and his sister at the trial unequivocally stated that he was.

Insofar as the applicant showing that he expected he would be able to procure Kirby's testimony at the next term, he showed this to the greatest extent he could, the actions of the sheriff having coincidentally prevented his discovery of Kirby's condition and prognosis. At the least, there was no evidence that Kirby would not have recovered sufficiently within the following weeks in order to appear. If Kirby's unavailability continued to the next term of court, defendant could seek the testimony of the second-best, but in the circumstances of his absence important, onlookers.

Finally, the circumstances also compel the conclusion that the application was not made for the purpose of delay but for procure-

ment of the testimony of Kirby, whose presence was practically impossible. See *Brooks v. State*, 3 Ga. App. 458 (60 SE 213) (1907). Compare *Cobb v. State*, 110 Ga. 314 (1) (35 SE 178) (1900), and *Sutton v. State*, 70 Ga. App. 499 (28 SE2d 663) (1944). The *Sutton* case, at Division 3, recognizes that there are some causes of delay which are outside defendant's control. Further evidence of the fact that delay itself was not the purpose but only the result is the indication in the record that defendant was jailed awaiting trial, not having been able to make the $150,000 bond set and there being no action recorded on the application for bond reduction. A delay would not liberate him.

All of the statutory factors were present to entitle defendant to a continuance. The court was obliged to honor the subpoena by granting the continuance. No impediment for doing so appears. See *Murphy v. State*, 132 Ga. App. 654, 655 (1) (209 SE2d 101) (1974). Where the requirements of the statute are met, the court has no discretion to deny the continuance. *Brooks v. State*, supra at 463.

We do not even have to reach state or federal constitutional considerations of compulsory process or due process of law, which defendant newly raises at this level, because the statute suffices to protect his right to a fair trial in this instance. It is the statute's application by the court below which was faulty.

Compare *Wingfield v. State*, 159 Ga. App. 69, 71 (282 SE2d 713) (1981), where as here one of the desired witnesses was the identified confidential informant. There the court rested reversal on violations of federal fifth and sixth amendment rights, having found the statute in those circumstances an inadequate safeguard of defendant's rights. Also in *Murphy v. State*, supra at 655-656, the statute fell short; the state constitution was employed.[1]

On the other hand, the statute was applied in *Tomlin v. State*, 170 Ga. App. 123, 125 (5) (316 SE2d 570) (1984), where the absence of an alleged confidential informant, who had been subpoenaed, was the basis for a motion for continuance. The court held there was no error in denying the continuance because defendant had not complied with the statute. But here we have compliance. In *Curry v. State*, 177 Ga. App. 609 (1) (340 SE2d 250) (1986), the absent witness had not even been subpoenaed. The same is true in *Brown v. State*, 169 Ga. App. 520, 521 (1) (313 SE2d 777) (1984). In *Luttrell v. State*, 176 Ga. App. 508 (3) (336 SE2d 369) (1985), defendant did not show that he expected to be able to procure the witness' testimony at the next term, but no explanation for the lack of assurance was given there, unlike the instant case.

---

[1] Thus, the appellate court can review the question, if properly raised, even if the statutory requirements are not met. The particular discretion granted by OCGA § 17-8-22 may be insufficient to protect constitutional rights.

OCGA §§ 17-8-22 and 17-8-25, taken together, attempt to balance a defendant's rights to compulsory process and due process against the State's rights to go forward as planned and to a speedy trial, and these provisions apparently embrace also a recognition of the court's interest in administering its business efficiently. In the present case, the application of these statutes required a continuance, and because defendant was deprived of a material witness as a result of its denial, a new trial should be had.

2. Defendant enumerates as error the trial court's failure to require the State to make a showing of neutral, non-discriminatory reasons for excluding all black jurors by use of peremptory challenges. Defendant, who is white, argues that he was thereby deprived of his right to a fair cross-section in the selection of his jury. "Resolution of this enumeration of error 'properly turns on the application of equal protection principles.' *Batson v. Kentucky*, [476] U. S. __ [(fn. 4) 106 SC 1712, 90 LE2d 69]." *Pope v. State*, 256 Ga. 195, 202 (7 (f)) (345 SE2d 831).

"The equal protection clause of the United States Constitution guarantees a criminal defendant that the State will not exclude members of his race from the jury on account of race or on the assumption that members of his race will be unable to impartially consider the State's case. See *Batson v. Kentucky*, 476 U. S. __ (106 SC 1712, 90 LE2d 69); *Swain v. Alabama*, 380 U. S. 202 (85 SC 824, 13 LE2d 759); *Strauder v. West Virginia*, 100 U. S. 303, 309 (25 LE 664). However, since defendant was not a member of the allegedly excluded class, he lacked standing to make an equal protection claim. See in this regard *Batson v. Kentucky*, 476 U. S. __, supra, and *Ingram v. State*, 253 Ga. 622, 627 (fn. 4) (323 SE2d 801)." *Heaton v. State*, 180 Ga. App. 718, 719 (2) (350 SE2d 480). See also *Pope v. State*, 256 Ga. 195, 202 (7 (f)), supra.

3. Following the trial in the case sub judice, defendant wrote a letter to the trial court suggesting that his appointed trial counsel provided ineffective assistance at trial. Defendant requested that another lawyer be appointed to appeal his case. Following receipt of the defendant's letter the trial court, sua sponte, convened a hearing at which both defendant and his trial counsel were present. At that time the trial court appointed defendant's trial counsel to represent defendant on appeal. In this connection, the trial court directed that defense counsel was not to file any claim against himself for ineffectiveness and stated for the record that defendant had made no showing of ineffective assistance of counsel.

Defendant enumerates as error the trial court appointing trial counsel, against whom defendant charged ineffective assistance at trial, to represent defendant on appeal. The trial court's direction to defense counsel against raising claims of ineffective counsel against

himself is consistent with the ruling in *Castell v. Kemp*, 254 Ga. 556 (331 SE2d 528), which holds that defense counsel is precluded from presenting a claim of ineffective assistance of counsel concerning a trial in which he participated due to the ethical prohibition against a lawyer acting as a witness. In view of the present posture of the case sub judice, the merits of defendant's claim of ineffective assistance of counsel or as to the trial court's finding that defendant has made no sufficient showing in this regard are not properly before us. Moreover, under the particular facts and circumstances of the case sub judice, defendant has not waived his claim of ineffective assistance of counsel and same is still viable. As there has been no waiver, any error in the appointment of trial counsel to represent defendant on appeal is harmless. See *Nixon v. State*, 255 Ga. 656, 657 (fn. 1) (340 SE2d 7).

*Judgment affirmed in part and reversed in part. Birdsong, C. J., Carley, Sognier and Pope, JJ., concur; Deen, P. J., McMurray, P. J., Banke, P. J., Benham and Beasley, JJ., concur in part and dissent in part.*

McMurray, Presiding Judge, dissenting.

OCGA § 17-8-25 sets forth the requirements which must be met before an appellate court may review a trial judge's discretion in denying a motion for continuance based upon the absence of a witness. *Curry v. State*, 177 Ga. App. 609 (1) (340 SE2d 250); *Brown v. State*, 169 Ga. App. 520, 521 (1) (313 SE2d 777); *Luttrell v. State*, 176 Ga. App. 508 (3) (336 SE2d 369).

In the case sub judice, defendant did not show that he expected to be able to procure the testimony of the witness at the next term of court or that the request for a continuance was not made for the purpose of delay. This should prevent our finding that the trial court erred in denying the continuance. *Luttrell v. State*, 176 Ga. App. 508 (3), supra; *Cobb v. State*, 110 Ga. 314 (1) (35 SE 178); *Sutton v. State*, 70 Ga. App. 499 (1, 4) (28 SE2d 663). While defendant contends that he was unable to provide proof of the witness' ability to attend the next term because of action taken by the sheriff to protect the witness, such a conclusion was not compelled by defendant's evidence in this regard. See OCGA § 17-8-20 and *Lucas v. State*, 174 Ga. App. 580 (1) (330 SE2d 792). Additionally, it is noted that the case sub judice is not one of those cases such as *Brooks v. State*, 3 Ga. App. 458 (60 SE 213), wherein it is apparent as a matter of law from the evidence adduced in behalf of defendant's motion that it is not his purpose to delay the case, but only to procure the attendance of his witness. In the case sub judice, there is no basis for holding the denial of the motion an abuse of the trial court's discretion. *Curry v. State*, 177 Ga. App. 609 (1), supra. Therefore, I respectfully dissent as to Division 1 of the majority opinion, as in my view the case sub

judice should be affirmed in its entirety.

I am authorized to state that Presiding Judge Banke joins in this dissent.

BEASLEY, Judge, concurring in part and dissenting in part.

While I fully agree with the rest of the opinion, I cannot concur in Division 2 and would remand for a hearing pursuant to *Batson v. Kentucky*, 476 U. S. ___ (106 SC 1712, 90 LE2d 69) (1986), were not a new trial necessary.

The court in Division 2 concludes that the white defendant has no standing to test, on equal protection grounds, the exclusion of blacks from the jury by way of the state's exercise of the peremptory challenge.

Defendant's grounds at trial were not only federal constitutional equal protection, but also federal constitutional due process and rights "under Georgia laws to a fair cross section from which to select a jury." In support of standing, which the court ruled he did not have, he cited *Peters v. Kiff*, 407 U. S. 493 (92 SC 2163, 33 LE2d 83) (1972). In that case, a white man claimed that there was a systematic exclusion of Negroes from grand jury and petit jury service.

On appeal, McGuire rests on federal due process as well as equal protection, and to his right to a fair and impartial jury drawn from a fair cross section, under the sixth and fourteenth amendments and under Georgia law. With respect to the latter, he cites *Devier v. State*, 250 Ga. 652 (1) (300 SE2d 490) (1983), and *West v. State*, 252 Ga. 156 (313 SE2d 67) (1984).

The decision in *Devier* was based on the statutory requirement of a fairly representative cross section of the intelligent and upright citizens of the county, OCGA § 15-12-40 (a) (1), to serve as traverse jurors, which it was concluded applied also to grand jurors, citing *Sanders v. State*, 237 Ga. 858 (1) (230 SE2d 291) (1976). *Sanders*, too, was at bottom a statutory inquiry, being based on *Gould v. State*, 131 Ga. App. 811 (207 SE2d 519) (1974), affirmed in part and reversed in part, 232 Ga. 844 (209 SE2d 312) (1974). *West* followed *Devier* in finding that the grand juries indicting each of these male defendants were *statutorily* infirm in their underrepresentation of women.

The trial court's as well as the majority's rejection of McGuire's challenge was based on *Pope v. State*, 256 Ga. 195, 202 (7) (f) (345 SE2d 831) (1986), but that case dealt only with an equal protection ground. So did *Heaton v. State*, 180 Ga. App. 718, 719 (2) (350 SE2d 480) (1986), which also underlies the majority's opinion here. The decision in *Batson*, upon which *Pope* turned, was also founded on the requirements of equal protection. That is why the claim, to be reached on its merits, had to be that of a black defendant, which Batson was.

Neither the United States Supreme Court in the *Batson* decision, nor the Georgia Supreme Court in the *Pope* decision, ruled that only a black defendant had standing to challenge the racially neutral exercise of the peremptory challenge. Here we have in addition other laws called to support the request for a showing of racially neutral peremptory challenge exercise by the state, and none of them were ruled on in *Batson* or *Pope*. The majority recognizes that there is a difference, by citing *Ingram v. State*, 253 Ga. 622, 627 (fn. 4) (323 SE2d 801) (1984), which mentions the different standing issues when due process rather than equal protection are raised.

In fact, *Batson*, expressly points out: "Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try . . . As long ago as *Strauder* [*v. West Virginia*, 100 U. S. 303 (25 LE 664) (1880)] . . . the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded *juror* . . . The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice . . . the [peremptory] challenge may be, and unfortunately at times has been, used to discriminate against black *jurors*. By requiring trial courts to be sensitive to the racially discriminatory use of peremptory challenges, our decision enforces the mandate of equal protection *and furthers the ends of justice*. In view of the heterogeneous population of our nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that *no citizen is disqualified from jury service because of his race*." *Batson v. Kentucky*, supra, 90 LE2d at 81, 89. (Emphasis supplied.) See *Strauder v. West Virginia*, supra, 100 U. S. at 308, 309, where it is recognized that exclusion of blacks as jurors denies *them* equal protection of the laws in violation of the Fourteenth Amendment. The harm to both prospective grand jury foremen from purposeful discrimination and to "the fundamental values of our judicial system and our society as a whole" were also deemed routable by a criminal defendant in *Rose v. Mitchell*, 443 U. S. 545, 556 (99 SC 2993, 61 LE2d 739) (1979). Standing to raise even an equal protection claim was granted to a white defendant in *United States v. Sneed*, 729 F2d 1333 (11th Cir. 1984).

Thus I would not hold that defendant lacked standing to raise the due process and statutory bases and thereby attack the peremptory challenge exercise. If either of these bases apply to the peremptory challenge question, then obviously a white person can raise them,

as he would be harmed by their violation.[1] In addition, how else could the integrity of the system be protected if the question cannot be raised in trials of white defendants as well as in trials of black defendants? A black jury venireman could not do it. Yet his or her right to serve is not limited to the trials of black defendants.

It would be arrogant of our law if it prevented one accused of a crime from calling attention to the possibility that the trial procedure was being used by the state's representative to discriminate against a class of citizens by their exclusion from participation in the process of judging the accused. It would be blind legalism to ask, "What is it to you, who are white?" when even the state statute requires a representative cross-section. The process by which we adjudge guilt should not itself be immune from examination because of the race of the challenger.

I am authorized to state that Presiding Judge Deen and Judge Benham join in this opinion.

DECIDED DECEMBER 4, 1987.

*W. Benjamin Ballenger*, for appellant.

*David L. Lomenick, Jr., District Attorney, David J. Dunn, Jr., Assistant District Attorney*, for appellee.

---

[1] Harm to the defendant was expressly ruled not to be a prerequisite for a challenge of purposeful discrimination in the selection of the grand jury foreman, in *Rose v. Mitchell*, supra at 550 (II A), which dealt with an equal protection claim.