## A90A1044. McMONAGLE v. THE STATE.
(395 SE2d 821)

BIRDSONG, Judge.

Michael McMonagle was convicted of the offense of obstructing a highway, street, sidewalk, or other public passage in violation of OCGA § 16-11-43. McMonagle, an advocate against abortion, was taking part in a demonstration outside The Feminist Women's Health Center on October 5, 1988. About 300 persons, including protestors for and against abortion, were present, demonstrating outside the confines of barricades set up by police around the building and adjacent area. The demonstration was noisy and chaotic. As clinic employees escorted patients into the clinic, the employees and patients were shouted at and harassed, called murderers and killers, and on occasion, were subjected to physical insult. Several "pro-life" protestors were arrested for crossing or climbing over the barricades and depositing themselves in the pathways or areas leading directly into the building, and refusing to remove themselves when instructed to do so by police.

Appellant was the only person arrested for obstruction of public ways who remained behind the barricade. He was tried as a party to the crimes of the others, pursuant to OCGA §§ 16-2-20 and 16-2-21, for having placed himself standing on a low wall and using a loud bullhorn to exhort and encourage protestors to engage in the acts which resulted in their arrest. He appeals his conviction on grounds mainly that he should have been entitled to a directed verdict of acquittal because the State did not prove McMonagle or anyone else by his urging and abetting obstructed a "public" passage such that the obstruction renders public passage impassable without "unreasonable inconvenience or hazard," and that any such person "refuse[d] to remove the obstruction after receiving a reasonable official request or order to do so." Appellant also complains of the trial court's refusal to allow into evidence a video filming of his arrest. *Held*:

1. Appellant's arguments, and the State's rebuttal, center mainly upon whether (as appellant contends) the area inside the barricades was no longer "public" by virtue of being barricaded off, so that the offense of obstruction of "public" passage could not have been committed in any event. We have no doubt that the establishment of temporary barricades along or around a public passage during the legitimate exercise of police power does not, by confining an area for certain purpose, render such passage non-public or "private," such that a person unlawfully crossing the barricade and obstructing the confined area could quixotically claim he commits no crime.

Pretermitting all those arguments, however, is the fact that the record shows without debate the barricades did not completely close off the public access of persons legitimately present and trying to

enter the building, but that the barricade was erected along the curb of the street, and narrow areas of sidewalk were left open to public passage. Moreover, members of the public having business on the premises had ingress and egress and were not shut out by the police barricades. That is, the passage referred to was in any light still usable and was used by the public. Thus, any argument about whether an area temporarily barricaded for protection of the public passage ceases to become public passage so that (as appellant argues) in effect it can never be protected from criminal obstruction, is mere polemic.

As to whether there was any "obstruction" of the area by anyone so as to make appellant a party to the crime under the evidence, appellant misses the mark completely by his insistence that there is no clear evidence he instructed anyone to *cross the barricades*. The evidence shows clearly that at the very least he loudly exhorted those who did cross the barricades: "You are about to be arrested, you may be hurt, go limp, do not offer any . . . resistance, just go limp"; and that the protestors who crossed the barricades did do the things appellant instructed, went "limp" and played "dead." One officer testified that "[t]he majority of [those protestors], once I gave them a warning, *instead of leaving*, they would just go limp, you know, just where we had a hard time trying to pick them up. *They would go limp and make no efforts in trying to remove themselves from the premises*." (Emphasis supplied.) Regardless how they came to be inside the barricaded area, clearly the refusal of the protestors to remove themselves after warning, and their going "limp," and playing "dead" constituted *obstruction*. OCGA § 16-11-43.

Moreover, the evidence shows that McMonagle, or the man with the bullhorn who was clearly identified as McMonagle, was "directing [protestors who crossed the barricades] to sing, to go over towards, to go and get arrested, go in areas where they were restricted from going"; that he was the only person with a bullhorn besides the one used by police, and was making very loud noises with his bullhorn, loud enough to overcome the noise created by the hundreds of persons demonstrating amid "chaos"; and was "directing [the protestors] to do certain things, where to move in different areas," and that the protestors *generally did what he told them to do*.

The evidence is also clear that the patients who entered the clinic and the employees who escorted them by surrounding them with umbrellas did not have access "without reasonable inconvenience and hazard."

The verdict in this case was amply supported by evidence sufficient to convince a rational trier of fact of appellant's guilt as party to the crime of obstructing public passage in violation of OCGA § 16-11-43, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Where criminal acts are committed, the law

of "parties to the crime" (§ 16-2-20) is of sufficient legislative scope and purpose to hold equally accountable one who hides behind the fence and intentionally urges or "leads" the others on to commit the criminal acts, and to submit such person to the same legal consequence as those actually committing the crime. In this respect, appellant's basic argument that he was somehow immune from punishment because he did not cross the barricades, is without point.

2. The trial court did not err in refusing to allow in evidence the videotape of appellant's arrest. The film was interspersed with propagandistic material which might tend to prejudice the jury and to distract its attention from the questions in issue. Moreover, the film concededly does not depict all of appellant's actions and the actions of those he attempted to lead, which resulted in his arrest. The trial court did not abuse its discretion in determining the film to be misleading and not a fair and accurate depiction of events or representation of the scene. *Jones v. State*, 250 Ga. 498 (299 SE2d 549); *Nash v. State*, 179 Ga. App. 702 (347 SE2d 651). The appeal is without merit.

*Judgment affirmed. Banke, P. J., and Cooper, J., concur.*

## ON MOTION FOR REHEARING.

McMonagle now asserts that he never argued "the area inside the barricade somehow became private." Thus it directly misrepresents and contradicts the assertions made on pp. 7-8 of his appeal brief, and twists to his advantage this court's holding that the area remained public.

Further, he now says, "the appellant alleges that the police, not the demonstrators, obstructed the sidewalk," so that McMonagle could not have done so himself in violation of OCGA § 16-11-43.

Further, contrary to his actual arguments on appeal and the ones newly created, he now contradictively agrees with this court that the barricades did not completely close off public access, and argues that, contrary to what we found in the record and expressly set out in the opinion, there was no evidence the demonstrators blocked access to the narrow passages still open.

Appellant's misrepresentations of the original posture of his appeal and of the clear facts of record create no new issues.

*Motion for rehearing denied.*

DECIDED JUNE 4, 1990 —
REHEARING DENIED JULY 11, 1990 — CERT. APPLIED FOR.

*Matthew S. Coles, Devin M. Ehrlich*, for appellant.
*James L. Webb, Solicitor, Helen A. Roan, R. Lee O'Brien, Jr.*,

*Assistant Solicitors*, for appellee.