ROBERTS *vs.* THE STATE OF GEORGIA.

1. Where, on the 18th day of the month, preceding a trial of a criminal case in Lumpkin superior court, on the 23d day of the month, application was made for compulsory process to obtain the presence of a witness who was in the penitentiary and confined in Atlanta, and the same was granted, it was error for the court to refuse to order an officer to execute the process, it appearing that the testimony of the witness was material, and that the defendant, by reason of confinement in jail, had been unable to serve the process.

(a.) The tender of money to defray the expenses of the witness was not necessary, where application was made to the court. The act of 1883, in respect to obtaining the evidence of convicts, was merely cumulative.

2. Where the sheriff deputized a person to take charge of the jury pending the trial of a criminal case, and the appointee acted as a bailiff and had charge of the jury, without being sworn, a new trial will be granted.

February 19, 1884.

Criminal Law. Witness. Practice in Superior Court. Jury and Jurors. Before Judge Estes. Lumpkin Superior Court. October Term, 1883.

Thomas Roberts and James M. A. Stringer were indicted for the murder of Drura W. Gaddis. The indictment also charged Roberts as a principal in the second degree. Stringer was convicted and sent to the penitentiary for life. At the time of the trial of Roberts, the present defendant, Stringer was alleged to be in the custody of one Bingham in Fulton county. Defendant was found guilty and sentenced to imprisonment for life. He moved for a new trial, which was refused, and he excepted. The substantial grounds of the motion are set out in the decision. In connection with the second division thereof, it is only necessary to state that the presiding judge certifies that the prosecutor being a bailiff, the court directed the sheriff to put another in his place, which was done, and the court supposed he was a sworn officer, but, in fact, the jury were sent out in his charge before he was sworn; that the court charged the jury specially not to speak to any one about the case, nor about anything else; and that, after this ground of the motion was made, seven of the jurors, who had not left the court room, and the bailiff were called up, and swore that, while the latter had charge of them, he said nothing to them, except that once he told them to " close up " and not to get scattered.

R. H. Baker; M. G. Boyd; J. J. Kimsey, for plaintiff in error.

C. Anderson, attorney general; W. S. Erwin, solicitor general, for the state.

JACKSON, Chief Justice.

There are two grounds in the motion for a new trial, on which the law requires that we reverse the judgment of the court below overruling that motion.

1. The trial was set for the 23rd day of the month. On the eighteenth, application was made to the presiding judge for process, requiring the person, in whose custody one Stringer, a material witness for the defendant and a convict in the penitentiary, was kept at hard labor, to produce said Stringer, to testify on the trial, by virtue of the provision of law in section 4027 of the Code. The process or order was granted the 18th of October, but on the 24th, the day the trial occurred, the witness was not present, and the defendant made a motion for a continuance, on the ground that he had applied for and obtained an order for the witness from the judge, but that the judge refused to furnish an officer to execute it; that he had been for the last six months in jail in the county of Hall, and on October 23rd, the day before trial, in the morning, was brought to this court; that he had been unable to serve the order, and that he expected to prove by the witness that he, the defendant, was not present on the night of the killing.

This motion was refused by the court in the following language :

"Upon hearing and considering this motion for a continuance in this case, it is ordered and adjudged that the motion be, and the same is overruled and disallowed, for the reason that defendant's counsel have shown no diligence to procure the testimony or presence of the witness, James M. A. Stringer, and for the further reason that the court told Messrs. Boyd and Baker, in conversation at White superior court, that if they desired to have Stringer's testimony, they had better apply for the order time enough to have him there, and that he would grant them, Boyd and Baker, compulsory process, when applied. for, and that said trial would not take place until the 23rd October, 1883 "

The application for process was made five days before the day set for trial, and six days before the day of trial, and the imprisoned witness was in Atlanta, the trial at

Dahlonega, and the time ample to execute the process and have the witness present on the trial. We see no want of diligence in the counsel. It was unnecessary to obtain the order earlier. The judge at White court cautioned the counsel to be in time. They were in time. The trouble was the refusal of the court to furnish the officer to execute the process. The record furnishes no evidence of a denial that the officer was not furnished by the court to execute this process. Without the officer to execute it, it was "mere ashes on the lips"—a mere *brutum fulmen.* The uncontroverted affidavit for the continuance shows that the officer was not furnished. The motion for a new trial, in the fourth ground thereof, certified to be true by the judge, asserts the same fact. So that it is clear that the judge did not order, but refused to order an officer to execute the process to procure the presence of the witness.

Was his testimony material? He was the man who was convicted and imprisoned for life in the penitentiary for the murder of the deceased. He did the shooting. Of all men he ought to have known best whether the defendant was present when the fatal deed was done. If his testimony were, as the defendant swore it would be, and what he expected it to be, it went to the vitals of the accusation of the defendant as present, aiding and abetting the murder.

The bill of rights of this state declares that "every person charged with an offense against the laws of this state . . . shall have compulsory process to obtain the testimony of his own witnesses." Art. 1, sec. 1, par. 5 of the Constitution ; Code, §4997. How can he compel the witness to attend, imprisoned in the penitentiary, without an officer of the court to execute the compulsory process, and secure the presence of the witness?

The law, under the constitution, is just as explicit. It enacts that "any judge of the superior court may issue his order to any officer having any person in his custody lawfully imprisoned, to produce such person before his court,

for the purpose of giving evidence in any criminal cause pending therein, without any formal application, or writ of *habeas corpus* for that purpose." Code, §4027.

The order was granted, but the court refused to furnish the officer to execute it; thereby the order itself had been as well refused. The reasons given by the court for not continuing the cause, on the showing made by the written affidavit of the defendant, appear to us, with the utmost respect for the integrity and ability of the judge who assigns them, insufficient in law for refusing to grant the continuance; and the refusal to furnish an officer to execute the process, made also a ground for new trial, appears to us, for the reasons given above, equally erroneous.

Nor is the suggestion of the attorney general, that the money to defray the expenses was not tendered by defendant, a more valid reason for refusing to furnish the officer. The attorney general rests that suggestion on the act of the last general assembly, providing for the production of convicts in the penitentiary to testify in behalf of defendants, which does require that expenses shall be paid by the defendant, or his poverty and inability be made known. But that act is, on its face, merely cumulative. It leaves the other remedies untouched. The section in the Code, under which the defendant proceeded, remains law, and it does not follow that, because, to pursue the gubernatorial remedy, expenses should be paid, therefore pre-existing judicial remedies are similarly burdened. They could not be so burdened. The attendance of witnesses and the process to procure it are part of the costs of the trial, and the constitution declares that "no person shall be compelled to pay costs except after conviction." Con., art. 1, sec. 1, par. 10; Code, §5002.

But even if the constitution could be violated, and the judicial remedy be made to be like the executive remedy, this record shows that this defendant is a stranger, lately removing from North Carolina, with no relative or friend in Georgia, at hard labor for his living when arrested, in

jail, and unable to pay the expenses. Nor does the court decline the compulsory process for this reason, and could not, under the oath to support that fundamental law, the constitution of the state.

2. The second ground on which the judgment must be reversed is, that the jury was placed in custody of a person not sworn in as a constable, and not under oath to keep the jury apart from intrusion and outside influence.

True, the sheriff had deputized this person to act, and by inadvertence he was not sworn; but the fact is, that he did not act under the oath of office, or any other oath touching his duties in regard to the jury, and that body, deliberating on the issue of life and death, liberty and life imprisonment, was entrusted to his unofficial care. And the fact is, that they were escorted by this "heathen man and publican," so far as law is concerned, all over the public square; and whithersoever this uncircumcised Philistine carried them, thither they went, within and without the camp. It needs neither argument nor authority to show that such a jury trial is wholly without law to support it, but the learned attorney general, with his usual candor and proper estimate of his non-partisan office, has referred us to authority which tends to support the position.

The sufficiency of the proof to support the verdict we decline to consider or adjudicate, for the reason that the new trial should be had without an intimation of our opinion on the facts and the weight of the evidence.

The other grounds of the motion we think insufficient to have authorized it; but it is granted, for the reasons and upon the grounds hereinbefore explained.

Judgment reversed.