## A97A1236. HARRIS v. THE STATE.
(494 SE2d 738)

McMURRAY, Presiding Judge.

Convicted of the armed robbery of Tammy Nelson, OCGA § 16-8-41, defendant Harris appeals on the grounds that the trial court erred in refusing to have the sheriff serve his witnesses subpoenas and in admitting evidence of similar transactions. We affirm.

## Factual Background

Around 10:00 in the evening on July 3, 1994, Nelson and her relatives parked at the Holiday Inn in DeKalb County where they were staying. As they walked toward their rooms, two men arrived in a dark mid-sized American vehicle with tag number CBG297 and jumped out. One of the men (identified by Nelson at trial as Harris) pointed a revolver at her and demanded money. Nelson complied, and the men escaped.

At trial, the court admitted evidence of two similar transactions. The first is that at 3:00 a.m. on June 21, 1994, Lisa Luttrell and Robin Martinez drove to the parking lot of a retailer in the general vicinity of the Holiday Inn to retrieve a car. Two men pulled up in a dark blue four-door American car with a tag having the first three letters "CBG." One man (later identified as defendant Harris) jumped out with a revolver and demanded their purses, which were surrendered. The men escaped.

The second similar transaction occurred on July 17, 1994. Dr. Cesar Garcia and his family were standing in the same Holiday Inn parking lot when an African-American male (later identified as Demond Johnson) approached them with a revolver·and demanded money. When a confrontation erupted, Johnson shot and killed Dr. Garcia and took his wallet. Defendant Harris was identified as the driver of the four-door American getaway car.

## Procedural History

During the proceedings related to the Garcia incident, the trial court found Harris indigent and appointed counsel. A jury convicted Harris of murder, felony murder and armed robbery.

Harris was later indicted for the armed robbery of Nelson. He declined assistance of a court-appointed attorney and proceeded pro se. On September 12, the State gave defendant Harris notice of intent to introduce similar transactions and filed its list of witnesses. During a pretrial hearing on September 21, the court informed Harris that he would have the right to subpoena his own witnesses. Harris requested 20 subpoenas from the clerk, which he received. On December 4, Harris filed his list of twenty-eight witnesses, including twenty-two in-state witnesses, one of whom was the incarcerated Demond Johnson. He also moved the court to suppress evidence of the similar transactions.

At a motions hearing on December 11, Harris stated that as an incarcerated, indigent, pro se defendant he had no means of having his subpoenas served, and he requested the trial court to arrange for the sheriff to serve them. The trial court declined, but Harris later

renewed his request for assistance in serving the subpoenas. He sought service on Wayne Gray, Patricia Gray and Barbara Nelson, relatives of Nelson who were nearby when the Nelson robbery took place and all of whom resided out of state. The trial court again denied this request, explaining to Harris that he is required to have a basis for the witnesses' testimony before subpoenaing them. Harris responded that their testimony concerned this case and similar transaction evidence.

The trial court next considered Harris' motion to suppress evidence of the two similar transactions and ruled that both transactions were admissible. In conjunction with a request by Harris for funds to hire a private investigator to interview witnesses, the trial court raised the issue of the subpoena service again and told Harris he had not informed the trial court of the nature of the witnesses' testimony. Harris responded that two witnesses were local police detectives (Officers Baumgardner and Ice) who would testify about their involvement in helping witnesses identify Harris in the Garcia incident and who would possibly impeach that identification. The prosecutor then left the hearing so Harris could freely discuss the anticipated testimony from witnesses to be subpoenaed.

The trial court instructed Harris, "What you have to do is show me what it is that they are going to say specifically, not just that you want them in court. . . . What particular evidence do they have that would assist you in the trial?" Harris told the trial court he had subpoenas for Officer Fox, Officer Clere, Lisa Luttrell and Robin Martinez, all of whom were involved in the identification of Harris in the Luttrell incident. He wanted an investigator to question them about the manner in which that identification occurred, and he wanted them subpoenaed. The trial court ruled that the anticipated testimony was not material to Harris' case, and that these people would be called by the prosecution anyway so no subpoenas were necessary. The trial court then refused Harris' request for funds for an investigator.

At trial, the prosecution called Lisa Luttrell and Robin Martinez, but not Officers Clere and Fox, to testify about the Luttrell robbery. The State also called Officers Raymond Ice and Aaron McCrea, but not Officer Baumgardner, to testify about the Garcia transaction. Harris repeated his objections to the similar transaction evidence. Of the twenty-eight people on Harris' witness list, seven were called by the State. When the State rested, Harris tried to call Demond Johnson, who was present, but Johnson refused to testify on the grounds of self-incrimination. Harris then told the trial court that since the trial court had been unwilling to have subpoenas served on his other witnesses, he would present no evidence.

The jury found defendant Harris guilty of the crime charged.

This appeal followed the denial of his motion for new trial. *Held*:

1. Defendant contends the trial court "erred in admitting evidence of an allegedly similar transaction."

After detailing the circumstances of the June 1, 1994 armed robbery of Lisa Luttrell and Robin Martinez at a pre-trial similar transaction hearing, the State's attorney stated that this "incident is similar not only in location [and] very close to the Holiday Inn [where the victim in the case sub judice was assaulted and robbed], but [that] it was very close in time, that the scheme was basically the same, that the identity is the same and that [the State seeks to] introduce it to show motive, and course of conduct." The trial court then took judicial notice of a similar transaction hearing in proceedings involving defendant's earlier prosecution (and subsequent conviction) for the July 17, 1995 armed robbery and murder of Dr. Cesar Garcia. It is undisputed that the trial judge in the case sub judice presided in the Garcia murder case and that, at a similar transaction hearing in that case, the State's attorney stated a proper purpose for admission at trial of the incident in the case sub judice. See *Harris v. State*, 268 Ga. 412 (490 SE2d 96); *Johnson v. State*, 266 Ga. 775, 778 (6) (470 SE2d 637). Specifically, the similar transaction hearing transcript in the Garcia murder case reveals that the State's attorney gave a detailed account of the three criminal transactions in question (i.e., the Garcia murder, the Luttrell and Martinez armed robbery and the armed robbery in the case sub judice), pointed out the striking similarities of these offenses and then stated, "that that evidence should be presented to a jury because it would go to show the defendant's intent, common scheme and plan and motive." Under these circumstances, and in light of the fact that the incident in the case sub judice was properly admitted as a similar transaction in the Garcia murder trial, we find neither error nor infirmity which could possibly have deprived defendant of a fair trial. Saying otherwise not only ignores that the State's attorney proffered a proper purpose for admission of the similar transaction evidence, but also fails to appreciate the symmetrical logic authorizing the trial court's procedure taking judicial notice of the similar transaction proceedings in the Garcia murder proceedings — all without discounting the State's burden under *Williams v. State*, 261 Ga. 640, 642 (1) (b) (409 SE2d 649). If the purpose for admitting proof of the crime in the case sub judice at the Garcia murder trial was proper, then the purpose for admitting proof of the Garcia murder in the case sub judice must also be proper.

2. Defendant Harris also contends the "trial court erred in failing to provide for service of [his] witness subpoenas."

The victim, a 27-year-old insurance professional, testified at trial and positively identified defendant as the perpetrator of the

crime charged. The victim specifically testified that she first observed defendant and an accomplice drive by in the hotel's parking lot; that the parking lot's lights gave her "above average" illumination of the crime scene; that she watched defendant point a revolver at her mother and that she then looked directly at defendant from a distance of "about three feet" as defendant pointed the gun at her. The victim further explained that she exchanged words with defendant during this encounter; that she had a clear view of defendant and that defendant's face was not covered or disguised in any way during the armed robbery. We believe that this overwhelming evidence of defendant's guilt renders harmless any possible error the trial court may have committed in failing to issue subpoenas for the police officers who collected identification evidence from the similar transaction victims. *Davis v. State*, 216 Ga. App. 580, 582 (3) (455 SE2d 115).

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Eldridge, J., concur. Senior Appellate Judge Harold R. Banke concurs in Division 1 and dissents in part. Beasley and Ruffin, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent.

1. In his first enumeration of error, Harris argues he was denied his right to compulsory process under the Georgia Constitution. Art. I, Sec. I, Par. XIV guarantees a criminal defendant the right to "compulsory process to obtain the testimony of that person's own witnesses." Yet the trial court below refused to have the sheriff serve Harris' subpoenas on the grounds that Harris did not articulate to its satisfaction the materiality of the testimony anticipated from each witness. The trial court's post-trial finding that Harris refused to identify the names and addresses of the witnesses is clearly erroneous, for prior to the pretrial hearing on this matter Harris had filed his list of witnesses with addresses, to which list he referred in the hearing. At that hearing he also told the court he had the subpoenas in hand with the witnesses' names thereon.

The issue is whether an indigent, incarcerated, criminal defendant must demonstrate to the court's satisfaction the materiality of the testimony of in-state witnesses whom he wishes to call before the court is obligated to have the sheriff serve the subpoenas.

The Georgia constitutional right of a criminal defendant to compulsory process means that the court must have a sheriff, free of charge, serve subpoenas of a criminal defendant so as to effectuate this right. *Harpe v. State*, 134 Ga. App. 493, 497-498 (3) (214 SE2d 738) (1975). See *Shaw v. State*, 163 Ga. App. 615, 618 (2) (294 SE2d 676) (1982) (constitution requires sheriff to exercise ordinary diligence in serving criminal defendant's subpoenas), rev'd on other

grounds, 251 Ga. 109 (303 SE2d 448) (1983). "It would never do to hold, as to a prisoner confined in jail, who might be wholly friendless, penniless, and unknown, that he should be required to serve the subpoenas upon his witnesses." *Paulk v. State*, 5 Ga. App. 567, 569 (1) (63 SE 659) (1909).

In *Roberts v. State*, 72 Ga. 673 (1884), the trial court refused to furnish an officer to execute an order requiring an incarcerated witness to appear for the defendant at trial. The Supreme Court of Georgia reversed the conviction, explaining that the Georgia Constitution's guarantee of compulsory process required an officer of the court to execute process without cost to defendant. Id. at 676-677. "Without the officer to execute [the process], it was 'mere ashes on the lips' — a mere *brutum fulmen*." Id. at 676. See *Watts v. State*, 14 Ga. App. 600 (81 SE 902) (1914) (even though represented by counsel, incarcerated defendant entitled to have sheriff serve subpoenas). See also Ga. Const. of 1983, Art. I, Sec. I, Par. XXIV ("No person shall be compelled to pay costs in any criminal case except after conviction on final trial"); OCGA § 15-16-21 (e) ("All costs arising from [sheriff's] services rendered in felony cases shall be paid from county funds whether the defendant is convicted or acquitted").

The trial court conditioned Harris' right to compulsory process on his showing to the court's satisfaction "what it is that [the witnesses] are going to say specifically" and on showing to its satisfaction the materiality of that testimony. Yet any party to a criminal or civil action may serve subpoenas without first demonstrating the content or materiality of the anticipated testimony. The question here is not under what circumstances a subpoena may be quashed, which would include an inquiry into materiality. See OCGA § 24-10-22; *Morris v. State of Ga.*, 246 Ga. 510, 511-512 (2) (272 SE2d 254) (1980). Subpoenas are issued, signed and sealed in blank to any party merely requesting them. OCGA §§ 24-10-20; 24-10-21. The subpoenas may then be served by a sheriff, his deputy, or anyone over 18, or by registered or certified mail, again without any showing to any court. OCGA § 24-10-23.

OCGA § 17-7-191, which Harris does not challenge as unconstitutionally restrictive, provides that a criminal defendant "may, upon application to the committing judicial officer or to the clerk of the court to which he is committed or bound to appear for trial, obtain subpoenas for such witnesses as he deems material for his defense." This statute implements the constitutional guarantee of compulsory process by allowing a defendant to obtain and serve subpoenas on those witnesses whom he, not the court or the prosecution, deems material. See *Jackson v. State*, 184 Ga. App. 133, 134-135 (1) (360 SE2d 907) (1987). The court, after all, has the authority to compel the attendance of witnesses, as recognized in *Teat v. State*, 181 Ga.

App. 735, 736 (353 SE2d 535) (1987). But the statute nevertheless does contemplate that someone, namely the defendant, determines the testimony to be material. Such must be done in good faith.

Thus, if a court has concerns that a pro se defendant is abusing his constitutional right by seeking to employ public resources to serve subpoenas on witnesses who clearly do not possess relevant information, the court may request defendant, in a hearing without the presence of the State, to indicate the materiality of the witnesses to be served. For example, Harris listed the then-Attorney General of Georgia as a witness, even though nothing indicates he would have relevant knowledge. If dissatisfied with defendant's explanation, the court should follow the procedure approved in *Myron v. State*, 248 Ga. 120, 122 (9) (281 SE2d 600) (1981).

In *Myron*, the trial court had the pro se defendant meet with appointed counsel, whom defendant had rejected as trial counsel, for the purpose of conferring as to which witnesses would be material to his defense. Upon the statement of counsel that a witness may have relevant testimony, the court without further inquiry issued and had served a subpoena on the witness. Id. at 123.

By this procedure a court-appointed advocate, acting on defendant's behalf with every possible inference in his favor, rather than the court, determines possible materiality as a threshold matter before the expenditure of both public monies and the time of public employees, and before the disruption of witnesses' lives. Public resources are then not expended unnecessarily in serving subpoenas on persons who unquestionably have no testimony possibly relevant to the case, nor are the lives of such people unnecessarily disrupted. The burden on the defendant's constitutional rights is virtually non-existent, and the statutory requirement that the defendant first deem the testimony material is met.

Harris' case illustrates this point. The trial court was dissatisfied with Harris' fairly detailed explanation that he wanted certain officers subpoenaed (all of whom were on the State's witness list) for purposes of challenging the identification procedures followed in the Luttrell and Garcia incidents. The court interrupted Harris to instruct how he should challenge those procedures without having to call the officers, even though Harris repeated that he wanted to question the officers before the jury. Clearly the court was not acting on Harris' behalf with every inference in his favor, nor could it do so in its role as an impartial neutral. Once the court determined its dissatisfaction with Harris' explanations, it should have appointed counsel for the sole purpose of reviewing the witnesses with Harris to make a threshold determination of materiality of their potential testimony. The court should have then had subpoenas served on all witnesses whom counsel deemed may have possibly material testimony.

The prosecution should not be a part of this process. *Ivey v. State*, 4 Ga. App. 828, 830 (1) (62 SE 565) (1908), held that only "the prisoner and his counsel[ ] should determine what witnesses will be needed in the defense. It would be unreasonable to hold, in the absence of clearest legislative declaration to the contrary, that the defendant, in order to enjoy his constitutional right of compulsory process for the attendance of [his in-state witnesses], should inform the State's counsel of the names of these witnesses, and disclose to him the materiality of their testimony. . . . We seriously doubt that such a limitation upon the guaranteed compulsory process could be upheld as against proper constitutional attack." The procedure should take place in camera without the prosecution present.

The Georgia Constitution is markedly different from the United States Constitution, which provides that the accused shall have the right "to have compulsory process for obtaining witnesses in his favor." U. S. Constitution, Amendment VI. The United States Supreme Court has held that the language "in his favor" means that a criminal defendant must "make some plausible showing [to the court] of how [the witness'] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U. S. 858, 867 (102 SC 3440, 73 LE2d 1193) (1982). See Fed. R. Crim. P. Rule 17 (b) (government need subpoena witnesses for indigent defendants only "upon a satisfactory showing [to the court] that the presence of the witness is necessary to an adequate defense"); *Washington v. Texas*, 388 U. S. 14, 16 (87 SC 1920, 18 LE2d 1019) (1967) (violation of Sixth Amendment where defendant deprived of "relevant and material" testimony "vital to the defense"); *Wingfield v. State*, 159 Ga. App. 69, 70-71 (282 SE2d 713) (1981) (materiality of unsubpoenaed testimony considered where only Sixth Amendment violation raised). The language "in his favor" does not appear in the Georgia Constitution.

OCGA § 17-8-25, which requires a defendant to show the court the content and materiality of a witness' testimony, applies only where the witness has in fact been subpoenaed and has failed to appear at trial and defendant seeks a continuance. See, e.g., *Gay v. State*, 220 Ga. App. 78 (467 SE2d 383) (1996). The court did not provide Harris with the means to serve a subpoena on anyone. Even if this statute were applicable, where OCGA § 17-8-25's required showings "are at war with the accused's constitutional guarantee of compulsory process to obtain the testimony of witnesses," the statute must yield to accommodate defendant's request to compel the witnesses' attendance. *Murphy v. State*, 132 Ga. App. 654, 655-656 (1) (209 SE2d 101) (1974). See *McGuire v. State*, 185 Ga. App. 233, 236 (1) (363 SE2d 850) (1987) (where OCGA § 17-8-25 fails to protect fully defendant's right to compulsory process, court may look solely to

state or federal constitution). But defendant must be "diligent in attempting to procure the attendance" of the witnesses. *Burney v. State*, 244 Ga. 33, 40 (257 SE2d 543) (1979).

OCGA § 24-10-94, which requires a defendant to prove the materiality of subpoenaing an out-of-state witness, would have applied to only five of the twenty-eight witnesses on Harris' list, and to none of the four DeKalb County officers he orally identified as necessary to his defense. Because out-of-state witnesses are beyond the trial court's jurisdiction and subpoena power, the state constitutional provision on compulsory process does not apply. *Hughes v. State*, 228 Ga. 593, 597 (3) (187 SE2d 135) (1972). Materiality is also considered where the witness to be subpoenaed is a confidential informant. See, e.g., *Moore v. State*, 187 Ga. App. 387, 388-389 (2) (370 SE2d 511) (1988); *Bennett v. State*, 153 Ga. App. 21, 27-28 (IV) (264 SE2d 516) (1980).

2. As in *Moore*, 187 Ga. App. at 392 (2), "[h]aving determined that error of a constitutional magnitude has occurred in this case, [it is to be tested] for prejudice. If the record reveals by evidence beyond a reasonable doubt that the error . . . did not affect the verdict then the error is harmless; otherwise, reversal is required." (Citations omitted.) The test presumes reversal is required unless the State shows by the record that no reasonable doubt exists that the error was harmless.

Harris' post-trial testimony that the court did not allow him to subpoena two alibi witnesses is to no avail, for these names did not appear on the witness list which was the basis for his subpoena request. Harris' own counsel from the Garcia trial stated that Harris had not told him these individuals could serve as alibi witnesses to the Nelson robbery, even though the Nelson robbery was introduced at the Garcia trial as a similar incident. Besides, Harris' counsel was unable to locate them at the referenced address. The failure to serve subpoenas on these two witnesses, and on the seven witnesses from his list who appeared at trial for the State, was harmless. Demond Johnson, also on the list, did appear but refused to testify on Fifth Amendment grounds. And the failure to serve subpoenas on the out-of-state witnesses was not contrary to law, for they were beyond the court's jurisdiction.

But the failure to serve subpoenas on the 12 absent DeKalb County officers was not harmless beyond a reasonable doubt. Eleven of these officers were so important to this case that the State had listed them on its own witness list. According to the trial testimony, at least five were involved in assisting witnesses identify Harris. *Wingfield* held that the failure to subpoena officers who could possibly impeach a witness's identification of the defendant required reversal. 159 Ga. App. at 72. See *Cofield v. State*, 247 Ga. 98, 106

(274 SE2d 530) (1981) (failure to subpoena witness who was at crime scene harmful); *Teat*, supra, 181 Ga. App. at 736 (harmful to fail to continue trial where alibi witness absent).

Nor can we say that the failure to serve subpoenas on the other six in-state residents was harmless beyond a reasonable doubt. Although I doubt the Attorney General had material knowledge, the State presented no evidence or argument that any of these absent witnesses, including the officers, lacked material knowledge. Nelson's positive identification of Harris does not establish beyond reasonable doubt that the absence of these witnesses had no effect on the verdict, for identification was the primary issue at trial. Depriving Harris of the opportunity to challenge identification through others involved in the case or in the similar transactions cannot be held at this juncture to be harmless error.

Because of the error discussed in Division 3, a new trial is required. Were it not for that error, this Court should remand the case to the trial court with direction to follow the *Myron* procedure and provide a new trial only if it received the statement of counsel that the witnesses were material.

3. The second enumeration of error is the admission of evidence of the Garcia transaction. Harris contends the State wholly failed at the pretrial hearing or at trial to specify its purpose for this evidence.

To introduce evidence of similar transactions, the State "must make three affirmative showings," the first of which is the express designation of an appropriate purpose for the evidence (such as identity, motive, guilty knowledge, intent, etc.). *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). "[T]he party offering the prior act evidence must show and the court must affirmatively find . . . that the party offering the evidence has an appropriate purpose for seeking its introduction into evidence and is not seeking to try and show that, because of an unconnected act in the accused's past, the accused should be convicted of the present charge." *Barrett v. State*, 263 Ga. 533, 535 (2) (436 SE2d 480) (1993). See *Williams*, supra at 643; *McClain v. State*, 220 Ga. App. 474, 476 (5) (469 SE2d 756) (1996).

The State cannot bypass this showing. *Harris v. State*, 222 Ga. App. 52, 55 (2) (b) (473 SE2d 232) (1996), refers to this express showing by the State as "the most important procedural aspect of *Williams*." *Stephan v. State*, 205 Ga. App. 241, 243 (2) (422 SE2d 25) (1992), held that where the prosecutor did not affirmatively state on the record the purpose for the similar transaction evidence, the conviction should be reversed. Compare *McTaggart v. State*, 225 Ga. App. 359, 365 (2) (483 SE2d 898) (1997) (where prosecutor stated in written notice the purpose for the evidence, failure to make oral announcement harmless).

At the pretrial hearing the State gave notice that the purpose for which it sought to introduce the Luttrell robbery was to show motive for the indictment on trial and course of conduct. As to the Garcia murder, the court ordered that a portion of the transcript from a Garcia pretrial hearing be appended to the transcript of the pretrial hearing in this case. Although in that excerpted transcript the State announced an appropriate purpose for admitting the Nelson robbery in the Garcia case, the State never announced to the court or to Harris any purpose for admitting the evidence of the Garcia transaction in this case. The purpose in this robbery case may or may not have been identical to that announced in the murder case.

Without any such announcement, the trial court could not and in fact did not rule on the legitimacy of any specific purpose for which this testimony was offered.

The court should have conducted a *Williams* hearing and, upon a sufficient showing by the State, made the required findings before allowing in evidence of the Garcia incident.

I am authorized to state that Judge Ruffin joins in this dissent and Senior Appellate Judge Harold R. Banke joins in Divisions 1 and 2 of this dissent.

DECIDED DECEMBER 5, 1997 — 

*Paul J. McCord*, for appellant.
*J. Tom Morgan, District Attorney, Desiree S. Peagler, Assistant District Attorney*, for appellee.

